IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANNETTE RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-cv-00297 |
| | § | |
| CITY OF CORPUS CHRISTI, | § | |
| PAULETTE GUAJARDO, | § | (JURY TRIAL DEMANDED) |
| PETER ZANONI, | § | |
| STEVEN VIERA, | § | |
| AND EYVON MCHANEY, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF, ANNETTE RODRIGUEZ'S VERIFIED FIRST AMENDED COMPLAINT, APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, AND REQUEST FOR DECLARATORY RELIEF**

Plaintiff, Annette Rodriguez, by and through her undersigned counsel, files this First Amended Complaint against the City of Corpus Christi, Paulette Guajardo, Peter Zanoni, Steven Viera, and Eyvon McHaney (hereinafter referred to collectively as "Defendants"), and in support thereof states as follows:

**PARTIES**

1.      Plaintiff, Annette Rodriguez ("Plaintiff" or "Ms. Rodriguez"), is a current employee of the City of Corpus Christi and is an adult individual residing at 13901 River Rock Drive, Corpus Christi, Texas 78410.

2.      Defendant, City of Corpus Christi ("City"), is a governmental entity and a subdivision of the State of Texas, an "employer" within the meaning of 29 U.S.C. § 203(d), an "enterprise" under 29 U.S.C. § 203(r), and a "public agency" within the meaning of 29 U.S.C. §

203(x) and employs Ms. Rodriguez.  The City may be served through its agent, Mayor Paulette Guajardo, at 1201 Leopard Street, Corpus Christi, Texas 78401.

3.     Defendant, Paulette Guajardo ("Ms. Guajardo" or "Mayor"), in her official capacity as Mayor of the City, may be served with service of process at 1201 Leopard Street, Corpus Christi, Texas 78401.

4.     Defendant, Peter Zanoni ("Mr. Zanoni"), in his official capacity as City Manager for the City, may be served with service of process at 1201 Leopard Street, Corpus Christi, Texas 78401.

5.     Defendant, Steven Viera ("Mr. Viera"), in his official capacity as Assistant City Manager for the City, may be served with service of process at 1201 Leopard Street, Corpus Christi, Texas 78401.

6.     Defendant, Eyvon McHaney ("Ms. McHaney"), in her official capacity as Director of Human Resources for the City, may be served with service of process at 1201 Leopard Street, 2nd Floor, Corpus Christi, Texas 78401.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the causes of action related to the Fair Labor Standards Act ("FLSA") and the Equal Pay Act ("EPA") are federal questions.[1]  At all times pertinent to this Complaint, Defendants were an "employer" within the

---

[1]     Ms. Rodriguez has a complaint pending before the Equal Employment Opportunity Commission ("EEOC"), which addresses the sex, age, and disability discrimination she faced and complained of while working for the City. One (1) example of this behavior occurred on or about January 2020, when Mr. Zanoni, with the approval of the City, invited all the Directors and Assistant Directors to attend a retreat.  The retreat featured a presenter who was approved by Mr. Zanoni, and who showed inappropriate materials, and made unprofessional and lewd comments during the presentation.  Specifically, the presenter displayed a slide that showed a naked woman with a doctor laying on the woman's chest.  The presenter stated that the slide showed why doctors were not excited about the invention of the stethoscope because they enjoyed laying on naked women's chests.  Instead of stopping the presentation there, Mr. Zanoni (and other men in the room) laughed, ratifying the speaker's outrageous, unprofessional, and inappropriate behavior.  The women in the room, including Ms. Rodriguez, felt beyond uncomfortable and extremely embarrassed.

meaning of 29 U.S.C. § 203(d), an "enterprise" under 29 U.S.C. § 203(r), and a "public agency" within the meaning of 29 U.S.C. § 203(x).   Additionally, this Complaint is brought, in part, pursuant to 42 U.S.C. § 1983 ("Section 1983") and jurisdiction is based, in part, on 28 U.S.C. § 1343.   Finally, there is pendent jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims regarding Texas Whistleblower Statute violations because they are so related to the federal question claims that they constitute the same case or controversy. In fact, in many instances, these state law claims form part of the federal retaliation claims.

8.      This action arises under the laws of the state of Texas, as Defendants intended their misconduct, and the conduct they encouraged, to adversely affect a resident of Texas, making Texas law applicable.   This action arises under the laws of the state of Texas because the events that form the bases of this suit occurred in Texas.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the Defendants, in their official capacities, reside in this district and in this state.   Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Corpus Christi, making venue proper in the Corpus Christi Division of the Southern District of Texas.   *See* 28 U.S.C. § 1391(b).

### CONDITIONS PRECEDENT

10.      All conditions precedent to Plaintiff's recovery and/or initiation of this suit have occurred, been performed, excused, waived, and/or have otherwise been satisfied.

### FACTUAL BACKGROUND

11.      Ms. Rodriguez began working for the Corpus Christi Public Health District in or

---

Ms. Rodriguez does not specifically address those claims herein because the EEOC has not issued a Right to Sue Letter as of the date of this filing.

about 2002, and the following year she was appointed Interim Director of Public Health.  Ms. Rodriguez remained Interim Director, until January 2010, when the City officially promoted her to Director of Public Health.  At all relevant times, Ms. Rodriguez has been employed by the City.

12.     Pursuant to the Employment Agreement Ms. Rodriguez signed in January 2010 when she was promoted to the Director of Public Health position, Ms. Rodriguez is employed at the pleasure of both the City Manager (Mr. Zanoni) and Barbara Canales, the Nueces County Judge ("County Judge").  Though a City employee, Ms. Rodriguez may only be terminated from her position (or suffer other adverse actions) when both the City Manager and County Judge agree to such action.

13.     Sometime after Mr. Zanoni became City Manager in May 2019, Ms. Rodriguez complained about her pay and, since that time, has diligently tried to resolve these concerns. However, Ms. Rodriguez's efforts have been to no avail, as Defendants have not only refused to pay Ms. Rodriguez the wages to which she is entitled under the FLSA and the EPA, they have also retaliated against her, jointly and individually, for voicing these concerns.

14.     On January 15, 2020, after Ms. Rodriguez brought her concerns regarding her pay to Mr. Zanoni's attention, he gave her a poor performance evaluation to justify giving her the minimum pay increase.  Ms. Rodriguez reported Mr. Zanoni's actions regarding her pay to the County Judge.  On February 3, 2020, the County Judge acknowledged Ms. Rodriguez's complaints and stated that she was impressed with the dedication Ms. Rodriguez had demonstrated and therefore awarded Ms. Rodriguez a four percent (4%) salary adjustment.

15.     On May 7, 2020, a "24 hours a day, 7 days a week" schedule was initiated, necessitated by the public health emergency declared by the Mayor on March 13, 2020 related to COVID-19.  Because of the "24 hours a day, 7 days a week" schedule, on April 16, 2020, Mr.

Zanoni signed a Memorandum, effective March 20, 2020 ("Memorandum"), which approved all City public health employees, "up to and including the director," to be paid on an hourly rather than salary basis, as non-exempt employees.  As of this lawsuit, these policies have not been rescinded and remain in force.

16.     Ms. Rodriguez is an employee of the City who is classified as non-exempt from overtime, per the Memorandum discussed above, which has not been rescinded in writing to her, and as such, has incurred some overtime during the period in question due to COVID-19.  This has resulted in overtime pay obligations for the City and it has refused to pay Ms. Rodriguez that to which she is rightfully entitled under the FLSA.  Defendant's continuing failure to properly compensate Ms. Rodriguez is not in good faith and is a willful violation of the FLSA as it applies to Ms. Rodriguez.

17.     Additionally, with the City's authority, Mr. Zanoni tasked the former Assistant Director of Human Resources, Rosa Medina ("Ms. Medina"), with gathering market studies that Mr. Zanoni would use when making salary decisions.  Mr. Zanoni stated he was going to give raises such that everyone's salary would be between ninety to ninety-five percent (90 – 95%) of the market average.  However, despite Ms. Medina's research, Mr. Zanoni arbitrarily determined whether the salary for each position should be higher or lower than the market average.  Neither years of experience nor performance were taken into consideration, although it is apparent the sex or age of each employee played a significant role.  Ms. Rodriguez was given a three percent (3%) salary increase—the third lowest percentage increase given—bringing it up to seventy-nine percent (79%) of market average.  Only four (4) out of forty (40) employees had a lower percentage of the market average salaries than Ms. Rodriguez, two (2) of whom are women.  Of the two (2) men who received a lower percentage of the market average salaries, one (1), Rudy Betancourt, is

no longer a City employee and has a separate action pending against the City.  Further, Dante Gonzalez, Ms. Rodriguez's Assistant Director, had his salary increased to ninety percent (90%) of the market average, despite having very little public health experience; Mr. Gonzalez's pay increase was a thirteen percent (13%) increase after only being employed in that position by the City for a few months.  During that time, four (4) out of twenty-eight (28) Assistant Directors made more as Assistant Directors than Ms. Rodriguez did as a Director.  Three (3) of those four (4) Assistant Directors were men who were close friends of Mr. Zanoni.  Unfortunately, when Ms. Rodriguez inquired how salaries were determined, Mr. Zanoni yelled at her, stating she was unappreciative, but he was unable to articulate a non-discriminatory reason or calculation for how salaries were determined.

18.     The retaliation Ms. Rodriguez experienced from Defendants after discussing the matters above with Mr. Zanoni only exacerbated the existing issues and can only be described as defamation and obvious mistreatment, which is inappropriate under the FLSA and the EPA.

19.     Specifically, on August 16, 2021, the City, Mr. Zanoni, and Mr. Viera began retaliating against Ms. Rodriguez by trying to further tarnish her reputation and work record by placing a false disciplinary memorandum ("Disciplinary Memorandum") in her personnel file that mischaracterized the events leading up to a press conference held on August 15, 2021 and left out key pieces of information that later required clarification.   Specifically, the Disciplinary Memorandum alleged that Ms. Rodriguez had failed to properly communicate and coordinate with City Leadership regarding the August 15, 2021 press conference.

20.     On August 18, 2021, after being notified of the Disciplinary Memorandum, the County Judge thought it necessary to correct the record and clarify that Ms. Rodriguez did an excellent job communicating and coordinating with City and County Leadership, and even

provided evidence of Ms. Rodriguez's efforts to coordinate a unified response to the Public Health Authority's mask mandate for public schools.

21.     Additionally, Mr. Zanoni, Ms. Guajardo, and the City initially voted to withdraw from the Corpus Christi-Nueces County Public Health District, purportedly to avoid lawsuits involving Health District employees and provide services at a lower cost.  Following this vote, the Defendants appeared to be creating an independent City Health Department and would no longer fund the Health District Director position, in which Ms. Rodriguez had been working.

22.     Later, however, Mr. Zanoni, Ms. Guajardo, and the City participated in another vote, opting for the City to retain authority over the Public Health District.  The amended plan attempts to extend exclusive authority over the Public Health District to the City.  However, the County Judge has opposed this plan, has not signed it, and has not concurred with the removal of Ms. Rodriguez as required by the Employment Contract.   Nevertheless, the City has not discontinued its adverse actions and has provided no assurances they will not continue.

23.      The apparent reasons expressed for this withdrawal, which are dubious both legally and factually, are that Ms. Rodriguez is already paid too much, the sum she is seeking to remedy past discrimination and pay issues is over a million dollars, and Mr. Zanoni can achieve an accredited health program more cheaply.  There is no allegation that Ms. Rodriguez has not done her job in a superlative manner during the pandemic, and all the accolades and performance appraisals she has received demonstrate exceptional performance.  Despite this, Defendants have gone along with Mr. Zanoni's charade, have been nonresponsive to Ms. Rodriguez's multiple written attempts to rectify the situation, and have unilaterally decided that of all those who must re-apply for their positions, Ms. Rodriguez is likely to be denied rehire and is, therefore, at risk of imminent termination, on information and belief, as early as March 1, 2022.

24.     Now that it has already taken public action concerning the Public Health District, and stirred significant publicity regarding same, the City finally seems willing to create a plan for its actions.  Defendants have verbally told most Public Health District Employees that their new positions will be publicly advertised, and though they must submit a new application in order to remain in their jobs, the application is a mere formality.  Similarly, Defendants have told most employees they can expect to retain their positions and will not experience any decrease in pay or seniority.  Notably, however, Ms. Rodriguez was never given such assurances.  The City began publicly advertising her job and launched a nationwide search for her replacement while she was still employed in her role.  This was the first job posting the City launched under its new plan, and it was not until weeks later that it began posting other high-level positions.  In an effort to follow the new system the City has arbitrarily enacted, Ms. Rodriguez submitted an application to remain in her position, which the City has, to date, refused to consider.

25.     The County Judge continues to vocalize displeasure with the City's arbitrary plan and continues to vote in County Commissioners Court sessions to retain the Public Health District, which has caused great confusion and uncertainty surrounding Ms. Rodriguez's position and future.  Defendants' unilateral decision to withdraw the Public Health District from the County's authority ensures that they will continue to take disproportionate adverse action against Ms. Rodriguez, thereby breaching her Employment Agreement, while both retaining all other Public Health District employees and staffing new employees who are coached to undermine her.  Such adverse action includes withholding pay, improperly assessing an adverse performance appraisal to ensure Ms. Rodriguez is denied a pay raise to which she is otherwise entitled, undermining Ms. Rodriguez' performance, publicly defaming Ms. Rodriguez to the press, and taking other adverse and unknown actions without the concurrence of the County Judge as required by Plaintiff's

Employment Agreement.

26.     Despite Ms. Rodriguez's current employment agreement still necessitating concurrence between the City Manager and County Judge, Defendants have insisted the City act independently to usher Ms. Rodriguez towards termination.  In his 2021 Performance Evaluation ("Evaluation") of her, Mr. Zanoni rated Ms. Rodriguez as "needs improvement" in several categories, despite her clear record of exceeding expectations, particularly during a global pandemic and in executing the City's COVID-19 relief plan.  The Evaluation is what the Human Resources department relies upon when making pay increase decisions.  Mr. Zanoni also included several false and accusatory comments on the Evaluation, alleging that numerous employees complained about Ms. Rodriguez, and the City subsequently launched an investigation to substantiate those complaints.  The City never notified Ms. Rodriguez or the County Judge about any such complaints.  Likewise, the City never involved Ms. Rodriguez in the investigation, nor did it allow her to respond to any allegations, as it had in the past.  To date, the City has never provided Ms. Rodriguez with any documentation or specific information regarding the allegations mentioned in her Evaluation, as required by City policy.   Ms. Rodriguez has been unable to confirm that any complaints (as asserted in the Evaluation) were in fact lodged against her.  At every turn, the City's conduct points to nothing other than its intent to terminate Ms. Rodriguez.

27.     Adding to the confusion is the fact that, for the same appraisal period and evaluation categories, the County Judge evaluated Ms. Rodriguez's performance as exceeding expectations and gave her the highest rating possible for each category.  The County Judge did not allege that any complaints or investigation were launched against Ms. Rodriguez during the evaluation period, nor did she provide any negative feedback regarding Ms. Rodriguez's performance in her role.  The County Judge has been consistently vocal about her satisfaction with

Ms. Rodriguez's work, desire for Ms. Rodriguez to remain in her position, and disdain for the improper adverse actions the City has taken and continues to take against Ms. Rodriguez.

28.     Additionally, Defendants and/or other City employees have been speaking with the press, making defamatory statements regarding Ms. Rodriguez, and alleging that her salary is greater than what her employment records show.  Specifically, Defendants and/or other City employees alleged that Ms. Rodriguez earned more than Dr. Anthony Fauci, the Chief Medical Advisor to the President and Director of the National Institute of Allergy and Infectious Diseases ("NIAID").  Defendants and/or other City employees alleged that Ms. Rodriguez made more than $600,000.00, which is not accurate.

29.     The foregoing defamatory statements are false, and Defendants acted with malice when they made them because they certainly had no reasonable basis to believe these statements were true since they have access to Ms. Rodriguez's employment records.  In fact, Defendants made these untrue statements to create a pretext for their withdrawal from the Corpus Christi-Nueces County Health District and, as a result, essentially firing Ms. Rodriguez from her current position with the City.

30.     To give Defendants the benefit of doubt as to malice, on November 11, 2021, undersigned counsel sent an e-mail to Miles Risley ("Mr. Risley"), City Attorney, identifying the defamatory statements and asking him to have Defendants correct the defamatory news articles. Mr. Risley did not respond, the defamatory news articles have not been retracted or corrected, and in some cases, have been repeated after advice to Defendants that they were incorrect.  This lawsuit followed.  In the time since the lawsuit was initiated, Ms. Rodriguez has received e-mails from residents of Nueces County, who have undermined her authority and hurled insults at her based on what they have read in the news.

31.     The County Judge continues to refuse to vote in favor of the City retaining exclusive management of the Public Health District.  However, contrary to the County Judge's advisement, the County voted in favor of amending the Cooperative Agreement to Operate the Health District ("Cooperative Agreement"), resulting in a four (4) to one (1) vote.  The City is expected to vote on the same amendment on February 15, 2022.  The County Judge has communicated that if the City also votes to amend the Cooperative Agreement, she will refuse to sign it.

## COUNT I – VIOLATIONS OF THE FLSA

32.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 31 above as if fully set forth herein.  Based on the foregoing, Defendants violated FLSA by failing to properly compensate Ms. Rodriguez for work performed in the employ of the Defendants.

33.     Since April 16, 2020, Ms. Rodriguez has been entitled to the rights, protections, and benefits provided under the FLSA for non-exempt employees because applicable policies require that she be paid on an hourly basis, rather than a salary basis, which requires overtime to be paid.  29 U.S.C. § 201, *et seq.*  Since April 16, 2020, Ms. Rodriguez has worked in excess of forty (40) hours per week, and thus is entitled to overtime compensation at a rate of one and one-half times her regular rate of pay for each additional hour or fraction thereof worked.  29 U.S.C. § 207.

34.     Defendants have not paid a substantial amount of Ms. Rodriguez's overtime pay and have not made a good-faith effort to comply with the overtime provisions within the FLSA, and the refusal to pay was knowing, willful, intentional, unreasonable, arbitrary, and in bad faith.

35.     Ms. Rodriguez has suffered damages as a direct result of Defendants' illegal

actions.  Defendants are liable to Ms. Rodriguez for unpaid overtime wages, liquidated damages, pre-judgment interest, attorneys' fees, and costs of Court as provided by the FLSA for all violations that occurred within the three (3) years prior to the filing of this suit.

36.     Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff as provided by the FLSA, Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate.

## COUNT II – UNLAWFUL RETALIATION IN VIOLATION OF THE FLSA

37.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 36 above as if fully set forth herein.

38.     The FLSA prohibits retaliation against an employee because she has "filed a complaint or instituted or caused to be instituted any proceeding under or related to" the rights contained in the FLSA.  29 U.S.C. § 215(a)(3).

39.     Since Ms. Rodriguez made a demand for the wages to which she is rightfully entitled, Defendants have retaliated against Ms. Rodriguez in violation of FLSA by unilaterally deciding to withdraw from the Public Health District, making defamatory and adverse comments in the press and otherwise, and single-handedly deciding how the transition will occur in a dubious manner, essentially dispensing with Ms. Rodriguez's position and requiring her to apply for a position she has held for almost twenty (20) years.

40.     Ms. Rodriguez has suffered damages as a direct result of Defendants' illegal and retaliatory actions.  Defendants are liable to Ms. Rodriguez for lost wages, liquidated damages, damages for emotional distress, exemplary damages, attorneys' fees, and costs of Court under FLSA.

## COUNT III – VIOLATIONS OF THE EQUAL PAY ACT

41.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

42.     Ms. Rodriguez's position as Director of Public Health requires a great deal of skill, effort, and responsibility.  However, Ms. Rodriguez has been paid less than other Directors and Assistant Directors—some of whom are male and younger, with less responsibilities, less experience, or perform similar work as her.  Additionally, Ms. Rodriguez has not been given raises at the same rate as her younger, male counterparts.

43.     The wage difference between male and female employees is not due to seniority, merit, quantity or quality of production, or a bona fide factor other than sex—such as education, training, or experience.  In the alternative, to the extent Defendants relied upon a bona fide factor other than sex, said factor was based on or derived from a sex-based differential in compensation, was not job-related with respect to the position in question, or was not consistent with a business necessity.

44.     The foregoing conduct constitutes a willful violation of the EPA.  29 U.S.C. § 206(d).

## COUNT IV – RETALIATION IN VIOLATION OF THE EQUAL PAY ACT

45.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 44 above as if fully set forth herein.

46.     Under the EPA, Defendants are legally prohibited from retaliating against employees who take action against discriminatory practices in the workplace.  29 U.S.C. § 215(a)(3).

47.     Since Ms. Rodriguez made a demand for the wages to which she is rightfully

entitled, Defendants have retaliated against Ms. Rodriguez in violation of the EPA by essentially dispensing with her position, publicly and erroneously espousing that her job can be done more cheaply, advertising for her job, and requiring her to apply for a position she has held and honorably served in for almost two (2) decades.

48.    Thus, Ms. Rodriguez has suffered damages as a direct result of Defendants' illegal and retaliatory actions.

## COUNT V – VIOLATION OF THE TEXAS WHISTLEBLOWER STATUTE

49.    Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 48 above as if fully set forth herein.

50.    When a local or state governmental unit retaliates against an employee who reports a violation of the law, the Whistleblower Act (Texas Government Code Chapter 554) waives immunity and allows the employee to sue for damages, reinstatement, and other injunctive relief. Tex. Gov't Code §§ 554.003, 554.0035; *Dallas Cty. v. Gonzales*, 138 S.W.3d 94, 101 (Tex. App.—Dallas 2006, pet. denied).  The Whistleblower Act has two (2) purposes: (1) protecting public employees from employer retaliation when reporting in good faith a violation of law; and (2) to secure lawful conduct from those conducting the affairs of state or local government units.  *Tarrant Cty. v. McQuary*, 310 S.W.3d 170, 173 (Tex. App.—Fort Worth 2010, pet. denied).

51.    Ms. Rodriguez is a public employee.  Tex. Gov't Code § 554.002(a); *see also* Tex. Gov't Code § 554.001(4) (public employee is employee or appointed officer paid to perform services for state or local government unit).  The governmental unit for which Ms. Rodriguez works is the City.  Tex. Gov't Code § 554.001(2) (local governmental unit includes county and municipality).

52.    Ms. Rodriguez made a good faith report that her employer or another public

employee violated the law. Tex. Gov't Code § 554.002(a). Specifically, Ms. Rodriguez complained to Mr. Zanoni regarding her unpaid wages and the pay gap between certain City employees. Upon bringing these complaints, the City failed to take them seriously and allowed the complained-of behavior to continue. *See* Tex. Gov't Code § 554.001(4) (defining law as state or federal statute, ordinance of local government, or rule adopted under statute or ordinance); *Llanes v. Corpus Christi ISD*, 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi 2001, pet. denied) (reporting is the disclosure of information tending to prove a violation of a criminal or civil law, state or federal constitution, statute, administrative rule, or regulation); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 626 (Tex. 2010) (good-faith reporting means the plaintiff believed the conduct violated the law and the belief was reasonable considering their training and experience); *City of Cockrell Hill v. Johnson*, 48 S.W.3d 887, 895–96 (Tex. App.—Fort Worth 2001, pet. denied) (employing entity is violator when the violation was committed by one of its representatives). Ms. Rodriguez was forced to express her concerns to the County Judge for her claims to be addressed and taken seriously.

53.     Ms. Rodriguez made the reports to the proper law enforcement authority. Tex. Gov't Code § 554.002(a). Specifically, Ms. Rodriguez reported this conduct to the County Judge in January 2020 after being ignored by Mr. Zanoni and the City. Additionally, on October 21, 2021, Ms. Rodriguez reported the unlawful conduct to the EEOC under EEOC Charge No. 451-2022-00187.

54.     Ms. Rodriguez suffered an adverse personnel action because of these reports. Tex. Gov't Code § 554.002(a). Specifically, Ms. Rodriguez has been forced to re-apply for the position she has held for nearly twenty (20) years, with zero guarantee that she will be rehired, though her colleagues who are also required to re-apply for their positions have received assurances that the

re-application process is a mere formality.  Additionally, Ms. Rodriguez has received an adverse employment review, which included unsupported allegations of creating a hostile work environment by failing to engage staff in a professional manner and belittling or berating them. The City placed a false Disciplinary Memorandum in Ms. Rodriguez's personnel file that mischaracterized the events leading up to a press conference that was held on August 15, 2021 and left out key pieces of information that later required clarification by the County Judge. Specifically, the Disciplinary Memorandum alleged that Ms. Rodriguez had failed to properly communicate and coordinate with City Leadership regarding the August 15, 2021 press conference.  More importantly, due to the defamatory statements that are being circulated regarding Ms. Rodriguez and her job performance, the public has begun to harass her, which has led to loss of confidence in her ability to keep the public safe, and thus detrimentally impacting the community's public health.  Tex. Gov't Code § 554.001(3) (defining personnel action as one that affects the plaintiff's compensation, promotion, demotion, transfer, work assignment, or performance evaluation); *Tex. Dep't of MHMR v. Rodriguez*, 63 S.W.3d 475 (Tex. App.—San Antonio 2001, pet. denied) (adverse personnel actions includes ultimate employment decisions like direct or constructive termination as well as lesser actions like reprimands, warnings, and missed pay increases).  The adverse personnel action described above would not have occurred when it did if Ms. Rodriguez had not reported the illegal conduct.  Specifically, all the adverse actions mentioned above occurred after the initial report to the County Judge was made.  Moreover, Ms. Rodriguez was forced to re-apply for her current position and received an adverse employment review after complaining about her pay and filing her EEOC Charge.  Notably, the adverse employment review occurred on January 7, 2022, which is within ninety (90) days of when Ms. Rodriguez filed her EEOC Charge.  Therefore, there is a rebuttable presumption that Ms.

16

Rodriguez's EEOC Charge triggered the adverse employment appraisal. *See* Tex. Gov't Code § 554.004(a); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010). Absent Ms. Rodriguez's reports, Defendants would not have rigorously retaliated against her the way they have.

55.     The foregoing conduct constitutes a willful violation of the Texas Whistleblower's Statute and Ms. Rodriguez is entitled to compensatory damages, prejudgment interest, and attorneys' fees for same. Tex. Gov't Code § 554.001 *et seq*.

## COUNT VI – Deprivation of Rights in Violation of Section 1983

56.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 55 above as if fully set forth herein.

57.     Section 1983 prohibits any person from depriving another of a federal constitutional or statutory right while using state government authority. 42 U.S.C. § 1983.

58.     Municipal liability under Section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)).

59.     Ms. Rodriguez is a citizen of the United States and brings this claim on behalf of herself and attaches a Verification to this First Amended Complaint verifying the facts set forth herein.

60.     Defendants are the City, the Mayor, Mr. Zanoni, Mr. Viera, and Ms. McHaney. Defendants are a municipality or are employees of the City and, at all times, acted under the color of the law. Defendants are also policymakers for the municipality of Corpus Christi because they have been tasked with and are involved in the day-to-day policymaking and implementation for the City.

61.     Here, Defendants have violated FLSA, EPA, and have retaliated against Ms. Rodriguez in violation of the Texas Whistleblower Statute.  At all times, Defendants were acting within their official capacities and with authority from the City.  Specifically, Defendants have refused to pay Ms. Rodriguez the unpaid wages she is owed under the law.  Defendants have defamed Ms. Rodriguez's reputation in the press, making it exponentially harder for her to do her job and causing needless public doubt in her ability to do her job as Director of Public Health. Citizens are now sending e-mail communications berating Ms. Rodriguez and the job she has done for her community during a global pandemic based on news reports containing false information. Defendants' actions have not only caused Ms. Rodriguez monetary damages, but they have also caused damage to Ms. Rodriguez's reputation, thereby detrimentally hindering her ability to keep her community safe during an ongoing health crisis.

62.     While committing the actions described above, Defendants were acting under the color of state law, acting pursuant to customs, practices, and policies of the City, doing so without proper reason or authority, without reasonable or probable cause, and with deliberate indifference to the rights of Plaintiff.  Specifically, Defendants, as policymakers, created, authorized, and/or ratified the decision to take adverse employment action against Ms. Rodriguez in the form an adverse employment appraisal, a Disciplinary Memorandum containing fabrications, and moving to take management of the Health District with the sole purpose of terminating Ms. Rodriguez's employment.

63.     Defendants violated the civil rights of Ms. Rodriguez, including violation of the rights found in the Fifth Amendment to the United States Constitution and those under Texas law (specifically, the Texas Whistleblower Statute) and its Constitution, by creating policies that are adverse to Ms. Rodriguez's employment and failing to comply with her Employment Agreement.

64.     As a direct result of these violations, and in accordance with Section 1983, Ms. Rodriguez's civil rights have been violated in that she has suffered, and will continue to suffer, damages as described in this First Amended Complaint, as well as to incur attorneys' fees, costs, and expenses as authorized by Section 1983, in an amount not yet ascertained, all of which will be shown according to proof at trial.

## **Requests for Relief**

65.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 64 above as if fully set forth herein.

66.     The relief requested is injunctive and declaratory in nature.  This relief is necessary to stop Defendants' unilateral disregard for Ms. Rodriguez's Employment Agreement, which requires consent from the County Judge before any adverse action is taken to terminate her employment.

67.     Here, judicial intervention is necessary because of the disingenuous and surreptitious manner in which Defendants are conducting themselves.  Defendants have repeatedly taken adverse action against Ms. Rodriguez, including denying her pay to which she is entitled, assessing a biased and improper evaluation of her performance, launching unsubstantiated allegations of complaints against her, publicly defaming her personal and professional reputation, and taking active steps to terminate her employment.  It is incontrovertible that Defendants are taking such action as retaliation for Ms. Rodriguez's complaints about her pay and discrimination. Defendants have entirely disregarded the provision of Ms. Rodriguez's Employment Agreement that requires the agreement of the County Judge before any adverse action is taken against her. Defendants' conduct continues to demonstrate that they are intent in acting independently to remove Ms. Rodriguez from her role.

19

**A.   Plaintiff Seeks a Temporary Restraining Order, as Well as Preliminary and Permanent Injunctive Relief.**

68.    Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 67 above as if fully set forth herein.

69.    Pursuant to FRCP 65 and Tex. Gov't Code § 554.003, Plaintiff requests that this Court issue temporary, preliminary, and permanent relief: (i) withdrawing the negative performance assessment documented by Mr. Zanoni in Plaintiff's Exempt Employee Performance Evaluation Form; (ii) compelling Defendants to honor the terms of Plaintiff's Employment Agreement, which requires the consent of the County Judge before any adverse action is taken against Plaintiff in her employment; and (iii) enjoining further retaliation and/or unjustified adverse actions.

### *i.    Ms. Rodriguez Is Entitled to Injunctive Relief*

70.    To obtain a temporary restraining order, as well as preliminary injunctive relief, Plaintiffs must show each of the following: (i) that Plaintiffs will likely suffer imminent and irreparable injury if Defendants' conduct is permitted to continue; (ii) there is no adequate remedy at law; (iii) there is a substantial likelihood that Plaintiffs will prevail on the merits; (iv) the threatened harm to the Plaintiffs outweighs the harm that a temporary restraining order would inflict on the Defendants; and (v) the issuance of a temporary restraining order would not adversely affect the public interest or public policy.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (preliminary injunction); *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (permanent injunction).

### *ii.    Ms. Rodriguez Will Continue to Suffer Irreparable Harm if an Injunction Is Not Issued and There Is No Adequate Remedy at Law*

71.    Plaintiff will continue to suffer irreparable harm if an injunction is not issued.

Irreparable injuries are actual and imminent, and not speculative or remote.  *Allied Home Mort. Corp. v. Donovan,* 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).  The harm to Plaintiff that is actual, imminent, and irreparable includes any adverse employment action the City takes without the concurrence of the County Judge, including, but not limited to, her termination as Director of Public Health, or any additional disciplinary actions that are unfounded and without support.  This injury is not merely speculative, as shown by the facts above, and, if not enjoined, is likely to occur again before a decision on the merits is reached.  *See, e.g.*, *State v. United States Environmental Protection Agency*, 989 F.3d 874, 884 (10th Cir. 2021).

72.     An irreparable injury is one that cannot be prevented or fully rectified by a final judgment following trial.  *Deerfield Med. Ctr. V. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).  Here, the injuries described above could not be prevented or fully rectified by a final judgment following trial because Ms. Rodriguez's employment, retirement, and livelihood depend on her continued employment.

73.     Additionally, there is no adequate remedy at law.  *Northern Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984).  For purposes of injunctive relief, there is no adequate remedy at law when (1) the legal remedy is merely illusory, or (2) effective legal relief cannot be obtained without filing multiple lawsuits.  *See, e.g.*, *Wilson v. Ill. S. Ry.*, 263 U.S. 574, 576–77 (1924); *see Winston v. General Drivers, Warehousemen & Helpers Local Union*, 879 F. Supp. 719, 725 (W.D. Ky. 1995) (no adequate remedy because remedy was considered illusory). Here, the latter of these factors can be established because without filing multiple lawsuits and appeals, Ms. Rodriguez may be left without employment for an indeterminate period of time.

### iii.     Ms. Rodriguez Is Likely to Succeed on the Merits of This Case

74.     As set forth in detail above, Ms. Rodriguez is extremely likely to succeed on the

merits of this case because Defendants have blatantly refused to pay Ms. Rodriguez the unpaid wages she is owed and have rigorously and openly retaliated against her in response to her complaints.

75.     Defendants have failed to give Ms. Rodriguez a fair performance evaluation and instead, utilized her annual performance evaluation as another opportunity to retaliate against her. Additionally, Defendants have continued to defame Ms. Rodriguez in the press, in an effort to destroy her reputation with the community and undermine her effort to do her job.  Defendants have required Ms. Rodriguez to re-apply for the position in which she has honorably and diligently served for nearly twenty (20) years, with no intent of re-hiring her, and with no assurance of the re-application process being a mere formality, as it was represented to her colleagues.  Lastly, Defendants have placed a false Disciplinary Memorandum in Ms. Rodriguez's personnel file that mischaracterized the events leading up to a press conference that was held on August 15, 2021 and left out key pieces of information.  While the County Judge only has positive things to say about Ms. Rodriguez's job performance, the City has taken the opposite position in an effort to remove her as Director of Public Health.  When viewed through an objective lens, the only reasonable conclusion from Defendants' actions is that they are retaliating against Ms. Rodriguez in an effort to terminate her from the Health District.

### iv.      *The Balance of Hardships Tilts in Ms. Rodriguez's Favor*

76.     The evidence presented herein clearly shows that granting Plaintiff's requested injunctive relief will not create a hardship for Defendants.  Specifically, removing a false and misleading performance evaluation will not harm or affect Defendants in any way.  More importantly, requiring Defendants to obtain the County Judge's consent before taking any adverse employment action against Ms. Rodriguez only enforces the terms of Ms. Rodriguez's

Employment Agreement and does not create a hardship for Defendants.

77.     Conversely, without the injunctive relief sought, Plaintiff is the only party who will continue to experience hardship in the form of workplace discrimination, a hostile work environment, defamation *per se*, and unpaid wages to which she is entitled.

78.     As such, the balance of hardships weighs heavily in Plaintiff's favor, thereby justifying the injunctive relief sought.

### *v.     The Public Interest Will Be Served by Injunctive Relief*

79.     Finally, it is important that the public interest be served by ensuring a fair and proper resolution here.  The injunctive relief sought here would not adversely affect public policy or public interest.  *Benisek v. Lamone*, 138 S. Ct. 1942, 1944–45 (2018).  Specifically, neither public policy nor public interest will be adversely affected by injunctive relief because it would only ensure that Ms. Rodriguez's Employment Agreement is properly enforced and reverse the improper actions taken by Defendants.  Moreover, injunctive relief in this case would protect public policy by safeguarding Ms. Rodriguez from further retaliation in response to her valid claims against Defendants.  Injunctive relief in this case would strengthen public policy because it would force public officials to be held accountable for their actions.  The public has an interest in protecting whistleblowers from adverse employment action resulting from the reporting of unlawful conduct.

80.     Plaintiff is willing to post a bond in the amount the Court deems appropriate and continue the bond set by the Court for the Temporary Restraining Order.

81.     Plaintiff asks the Court to set her application for a preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Defendants.

82.     Plaintiff asks the Court to set her application for injunctive relief for a full trial on the issues in this application, and after the trial, issue a permanent injunction against the Defendants.

**B.     Declaratory Judgment**

83.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendant's acts in violation of Section 1983 are arbitrary and capricious, are abuses of discretion, and are not in accordance with the law.

85.     Based upon the facts stated herein and pursuant to Section 1983, Plaintiff respectfully requests that this Court declare, adjudge, decree, and hold: that Defendants may not take any adverse action against Ms. Rodriguez, including, but not limited to, termination without the County Judge's concurrence.

86.     Ms. Rodriguez pleads this request for declaratory relief in addition to, and as an alternative to, its demand for injunctive relief.  Even if Ms. Rodriguez has somehow not met her burden of proof with respect to her requested injunction, she has clearly met the burden of proof needed for a declaration and for this Court to issue a finding that the Defendants acted arbitrarily and capriciously and that their actions amounted to a violation of Section 1983.

## PRAYER

87.     WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that the Court issue a citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

a.   A declaratory judgment declaring Defendants willfully, unreasonably, wrongfully, and without good faith violated their statutory and legal obligations,

and deprived Plaintiff of her rights, protections, and entitlements under federal law, as alleged herein;

b.  An order for a complete and accurate accounting of all the compensation to which Plaintiff is entitled under both the EPA and FLSA;

c.  Temporarily restrain, preliminarily and permanently enjoin, vacate and set aside the Exempt Employee Performance Evaluation Form completed by Mr. Zanoni;

d.  Issue a temporary restraining order, as well as preliminary and permanent injunctions enjoining any further retaliation and upholding Plaintiff's Employment Agreement which requires that no adverse action may be taken against her without the concurrent agreement of both the Corpus Christi City Manager and Nueces County Judge;

e.  Declare that Defendants have violated Section 1983;

f.  Liquidated damages equal to her unpaid compensation;

g.  All costs and attorneys' fees incurred in prosecuting these claims;

h.  Pre- and post-judgment interest;

i.  General damages;

j.  Special damages;

k.  Nominal damages;

l.  Exemplary damages;

m.  Costs of court; and

n.  Such further relief, both general and special, at law or equity, to which Plaintiff may show herself to be justly entitled.

25

Respectfully submitted,

Bryant S. Banes
Texas State Bar No. 24035950
Federal ID No. 31149
Daniela P. Armenta
Texas State Bar No. 24123162
Federal ID No. 3727884
NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas 77027
(713) 629-1800
(713) 629-1812 (Fax)
E-mail:  bbanes@nhblaw.com
           darmenta@nhblaw.com

**ATTORNEYS FOR PLAINTIFF,
ANNETTE RODRIGUEZ**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on this 18th day of February 2022, through the CM/ECF system, which caused Defendants to be served through their counsel of record by electronic means.

Frederick J. McCutchon
Renatto Garcia
Wood Boykin & Wolter, P.C.
555 N. Carancahua, Suite 1510
Corpus Christi, Texas 78401

*Attorneys for Defendants*

Bryant S. Banes

## VERIFICATION

STATE OF TEXAS                              §
NUECES COUNTY                               §

Before me, the undersigned notary, on this day personally appeared **Annette Rodriguez,** the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1.      "My name is Annette Rodriguez, and I am over the age of eighteen and am capable of making this Verification.

2.      I have read Plaintiff's First Amended Complaint against Defendants, the City of Corpus Christi, Paulette Guajardo, Peter Zanoni, Steven Viera, and Eyvon McHaney in Civil Action No. 2:21-cv-00297. The facts stated in it are within my personal knowledge and are true and correct to the best of my knowledge. To the extent the content of the foregoing First Amended Complaint is that of counsel, I have relied upon counsel in making this Verification. I understand that false statements herein are made subject to the penalties of perjury."

_____
Annette Rodriguez

**SUBSCRIBED AND SWORN TO BEFORE ME** on this 18ᵗʰ day of February 2022, to which witness my hand and official seal.

Patricia D Presas
My Commission Expires
11/18/2024
ID No. 132761607

_____
Notary Public in and for the State of Texas