IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANNETTE RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-cv-00297 |
| | § | |
| CITY OF CORPUS CHRISTI, | § | |
| | § | |
| Defendant. | § | (JURY TRIAL DEMANDED) |
| | § | |

## PLAINTIFF, ANNETTE RODRIGUEZ'S VERIFIED CORRECTED FOURTH AMENDED COMPLAINT

Plaintiff, Annette Rodriguez, by and through her undersigned counsel, files this Fourth Amended Complaint against the City of Corpus Christi (hereinafter referred to as "Defendant" or "City"), and in support thereof states as follows:

### PARTIES

1.     Plaintiff, Annette Rodriguez ("Plaintiff" or "Ms. Rodriguez"), is a former employee of the City of Corpus Christi and is an adult individual residing at 13901 River Rock Drive, Corpus Christi, Texas 78410.

2.     Defendant, City of Corpus Christi, is a governmental entity and a subdivision of the State of Texas, an "employer" within the meaning of 29 U.S.C. § 203(d), an "enterprise" under 29 U.S.C. § 203(r), and a "public agency" within the meaning of 29 U.S.C. § 203(x) and employs Ms. Rodriguez.  The City may be served through its agent, Mayor Paulette Guajardo, at 1201 Leopard Street, Corpus Christi, Texas 78401.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the causes of action related to the Fair Labor Standards Act ("FLSA"), the Equal Pay Act ("EPA"), Title VII of the

Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act, as amended ("ADA"), and the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), are federal questions.  At all times pertinent to this Complaint, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d), an "enterprise" under 29 U.S.C. § 203(r), and a "public agency" within the meaning of 29 U.S.C. § 203(x).  Additionally, this Complaint is brought, in part, pursuant to 42 U.S.C. § 1983 ("Section 1983") and jurisdiction is based, in part, on 28 U.S.C. § 1343.

4.      This action arises under the laws of the state of Texas, as Defendant intended its misconduct, and the conduct it encouraged, to adversely affect a resident of Texas, making Texas law applicable.  This action arises under the laws of the state of Texas because the events that form the bases of this suit occurred in Texas.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the Defendant, and its representatives, reside in this district and in this state.  Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Corpus Christi, making venue proper in the Corpus Christi Division of the Southern District of Texas.  *See* 28 U.S.C. § 1391(b).

## CONDITIONS PRECEDENT

6.      All conditions precedent to Plaintiff's recovery and/or initiation of this suit have occurred, been performed, excused, waived, and/or have otherwise been satisfied.

7.      Regarding Plaintiff's claims of violations under Title VII, ADA, and the ADEA, Plaintiff has a right to file a civil action in the appropriate District Court, as the following conditions were satisfied:

    a.  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on November 8, 2021, addressing the sex, age, and disability discrimination and retaliation she has endured during her employ with the City.

b.  Plaintiff's Charge of Discrimination contained alleged violations under Title VII, the ADA, and the ADEA.

c.  The EEOC issued its Right to Sue on February 18, 2022, and Plaintiff filed this Fourth Amended Complaint within ninety (90) days thereafter.

d.  Plaintiff has exhausted all her administrative remedies and fully cooperated with all investigative requests.

## FACTUAL BACKGROUND

8.      Ms. Rodriguez is a fifty-seven (57) year old woman who suffers from hearing loss.

9.      Ms. Rodriguez began working for the Corpus Christi Public Health District in or about 2002, and the following year she was appointed Interim Director of Public Health.  Ms. Rodriguez remained Interim Director, until January 2010, when the City officially promoted her to Director of Public Health.  At all relevant times, Ms. Rodriguez has been employed by the City but has served at the pleasure of both the City Manager and the County Judge in her position as Director Public Health.

10.      Ms. Rodriguez obtained her bachelor's degree from the University of Texas in May 1988 and her master's degree in Public Health from the University of Texas School of Public Health in December 1989.  Ms. Rodriguez has over thirty (30) years of experience working in public health.  Twenty-three (23) of those years have been at the Health District.

11.      As noted in paragraph 9, pursuant to the Employment Agreement Ms. Rodriguez signed in January 2010 when she was promoted to the Director of Public Health position, Ms.

Rodriguez is employed at the pleasure of both the City Manager and Barbara Canales, the Nueces County Judge ("County Judge").  Though a City employee, Ms. Rodriguez may only be terminated from her position (or suffer other adverse actions) when both the City Manager and County Judge agree to such action.

12.     Sometime after Peter Zanoni ("Mr. Zanoni") became City Manager in May 2019, Ms. Rodriguez complained about her pay and, since that time, has diligently tried to resolve these concerns.  However, Ms. Rodriguez's efforts have been to no avail, as Defendant has not only refused to pay Ms. Rodriguez the wages to which she is entitled under the FLSA and the EPA, it has also retaliated against her for voicing these concerns.

13.     Ms. Rodriguez has a reported disability (loss of hearing), which she disclosed to the City's Human Resources department.  Mr. Zanoni was made aware of same.  However, in or about July 2019, during a budget meeting, Ms. Rodriguez was sitting on the opposite side of the room from Mr. Zanoni and he asked a question she could not hear.  Ms. Rodriguez informed Mr. Zanoni of her disability, which requires her to wear hearing aids, and asked if he could please speak up.  Mr. Zanoni refused to meet her reasonable request.  Mr. Zanoni made no effort to accommodate Ms. Rodriguez's disability, and for the remainder of the meeting, she had to rely on Dante Gonzalez ("Mr. Gonzalez"), her Assistant Director at the time, to repeat Mr. Zanoni's questions.  Since that encounter, and until her termination, Ms. Rodriguez was excluded from critical meetings and brain storming sessions due to her disability.

14.     In or about October 2019, at the direction of Mr. Zanoni, Steven Viera ("Mr. Viera") called Mr. Gonzalez and told him that Dr. William Burgin ("Dr. Burgin"), the Public Health Authority at the time, needed to be fired because he was too old.  After Mr. Gonzalez received Mr. Viera's telephone call, he informed Ms. Rodriguez of the conversation.  Ms.

Rodriguez initially refused to comply with Mr. Zanoni's discriminatory order because Dr. Burgin is well-respected and had diligently served the community of Corpus Christi. However, Ms. Rodriguez was forced to terminate Dr. Burgin after Mr. Zanoni accused her of not doing her job because she refused to terminate him.

15.    Additionally, there have been several instances where Mr. Zanoni condoned unprofessional and lewd comments toward women. Specifically, in or about January 2020, Mr. Zanoni, with the approval of the City, invited all the Directors and Assistant Directors to attend a retreat at the Texas State Aquarium in Corpus Christi. The retreat featured a presenter (who was approved by Mr. Zanoni) who showed inappropriate materials and made unprofessional comments during the presentation. Specifically, the presenter displayed a slide that showed a fully nude woman with a doctor's head laying on her breast. The presenter stated the slide showed why doctors were not excited about the invention of the stethoscope because they enjoyed laying on naked women's breasts. Instead of stopping the presentation, Mr. Zanoni and other men in the room laughed, ratifying the speaker's outrageous, unprofessional, and inappropriate behavior. It is important to note that Mr. Zanoni is required to review all presentations prior to them being shown to City employees. Ms. Rodriguez and many other women in the room felt beyond uncomfortable and extremely embarrassed.

16.    On or about December 15, 2019, after Ms. Rodriguez brought her concerns regarding her pay to Mr. Zanoni's attention, he gave her a poor performance evaluation to justify giving her the minimum pay increase. Ms. Rodriguez reported Mr. Zanoni's actions regarding her pay to the County Judge. On February 3, 2020, the County Judge acknowledged Ms. Rodriguez's complaints and stated that she was impressed with the dedication Ms. Rodriguez had demonstrated and therefore awarded Ms. Rodriguez a four percent (4%) salary adjustment.

17.     On May 7, 2020, a "24 hours a day, 7 days a week" schedule was initiated, necessitated by the public health emergency declared by Mayor Paulette Guajardo ("Mayor") on March 13, 2020, related to COVID-19.  Because of the "24 hours a day, 7 days a week" schedule, on April 16, 2020, Mr. Zanoni signed a Memorandum, effective March 20, 2020 ("Memorandum"), which approved all City public health employees, "up to and including the director," to be paid on an hourly rather than salary basis, as non-exempt employees.  From then on, Ms. Rodriguez was paid an hourly rate.  Ms. Rodriguez's hourly rate changed over time, but she remained a non-exempt hourly employee.  The City did not guarantee Ms. Rodriguez a weekly minimum amount to be paid on a salary basis regardless of the number of hours she worked.  Ms. Rodriguez was only paid for the hours she worked.  As of this lawsuit, these policies have not been rescinded and remained in force from their effective date through the date of Plaintiff's termination.

18.     Ms. Rodriguez is an employee of the City who is classified as non-exempt from overtime, per the Memorandum discussed above, which has not been rescinded in writing to her, and as such, has incurred some overtime during the period in question due to COVID-19.  This has resulted in overtime pay obligations for the City and it has refused to pay Ms. Rodriguez that to which she is rightfully entitled under the FLSA.  Defendant's continuing failure to properly compensate Ms. Rodriguez is not in good faith and is a willful violation of the FLSA as it applies to Ms. Rodriguez.

19.     Additionally, with the City's authority, Mr. Zanoni tasked the former Interim Director of Human Resources, Rosa Medina ("Ms. Medina"), with gathering market studies that Mr. Zanoni would use when making salary decisions.  Mr. Zanoni stated he was going to give raises such that everyone's salary would be between ninety to ninety-five percent (90 – 95%) of

the market average.  However, despite Ms. Medina's research, Mr. Zanoni arbitrarily determined whether the salary for each position should be higher or lower than the market average.  Neither years of experience nor performance were taken into consideration, although it is apparent the sex or age of each employee played a significant role.  Ms. Rodriguez was given a three percent (3%) salary increase—the third-lowest percentage increase given—bringing it up to seventy-nine percent (79%) of market average.  Only four (4) out of forty (40) employees had a lower percentage of the market average salaries than Ms. Rodriguez, two (2) of whom are women.  Of the two (2) men who received a lower percentage of the market average salaries, one (1), Rudy Betancourt, is no longer a City employee and has a separate action pending against the City.  Further, Mr. Gonzalez, Ms. Rodriguez's Assistant Director at the time, had his salary increased to ninety percent (90%) of the market average, despite having very little public health experience; Mr. Gonzalez's pay increase was a thirteen percent (13%) increase after only being employed in that position by the City for a few months.  During that time, four (4) out of twenty-eight (28) Assistant Directors made more as Assistant Directors than Ms. Rodriguez did as a Director.  Three (3) of those four (4) Assistant Directors were men who Mr. Zanoni favors.  Specifically, after the January 2020 market adjustments but prior to the annual pay increases and the Memorandum replacing her salary with an hourly wage, Ms. Rodriguez was earning a $132,986.09 salary as Director of Public Health, while Gabriel Ramirez, Assistant Director of Water Quality & Treatment, earned a $134,105.21 salary, Michael Dice, Assistant Director of Development Services, earned a $148,470.00 salary, and Brett Van Hazel, Assistant Director of Construction Inspection, earned a $157,560.00 salary.  Even though Ms. Rodriguez was tasked with the management and operation of the entire Health District during a global pandemic, Assistant Directors in other departments were being compensated more, for equal or less work.  Unfortunately, when Ms. Rodriguez

inquired how such pay rates were determined, Mr. Zanoni yelled at her, stating she was unappreciative, but he was unable to articulate a non-discriminatory reason or calculation for how they were determined.

20.     The retaliation Ms. Rodriguez experienced from Defendant after discussing the matters above with Mr. Zanoni only exacerbated the existing issues and can only be described as defamation, obvious mistreatment, and adverse personnel actions which affected her pay, benefits, and job duties, as delineated further below, which is inappropriate under the FLSA and the EPA.

21.     Specifically, on August 16, 2021, the City, Mr. Zanoni, and Mr. Viera began retaliating against Ms. Rodriguez by trying to further tarnish her reputation and work record by placing a false disciplinary memorandum ("Disciplinary Memorandum") in her personnel file that mischaracterized the events leading up to a press conference held on August 15, 2021 and left out key pieces of information that later required clarification.   Specifically, the Disciplinary Memorandum alleged that Ms. Rodriguez had failed to properly communicate and coordinate with City Leadership regarding the August 15, 2021 press conference.

22.     On August 18, 2021, after being notified of the Disciplinary Memorandum, the County Judge thought it necessary to correct the record and clarify that Ms. Rodriguez did an excellent job communicating and coordinating with City and County Leadership and even provided evidence of Ms. Rodriguez's efforts to coordinate a unified response to the Public Health Authority's mask mandate for public schools.

23.     Additionally, Mr. Zanoni, the Mayor, and the City initially voted to withdraw from the Corpus Christi-Nueces County Public Health District, purportedly to avoid lawsuits involving Health District employees and provide services at a lower cost.   Following this vote, Defendant appeared to be creating an independent City Health Department and would no longer fund the

Health District Director position, in which Ms. Rodriguez had been working.

24.     Later, however, Mr. Zanoni, the Mayor, and the City participated in another vote, opting for the City to retain authority over the Public Health District.  The amended proposal attempts to extend exclusive authority over the Public Health District to the City.  However, the County Judge has opposed this, has not signed it, and has not concurred with the removal of Ms. Rodriguez as required by the Employment Agreement.  Nevertheless, the City terminated Ms. Rodriguez without the concurrence of the County Judge.

25.     As part of this plan to transition the Health District to the City, Defendant has developed a "Ten Point Strategic Plan," and one (1) of those points was a "Space Management" plan, for which Ms. Rodriguez was named as one (1) of the team members.  The Space Management team was organized to plan how the Public Health facilities and locations would operate under the City's unilateral management, all of which requires experience and knowledge regarding public health operations in conjunction with facility management.  However, since the team was organized, Ms. Rodriguez has been excluded from the meetings organized to discuss this effort.  Mr. Zanoni named Gilbert Trevino ("Mr. Trevino") as the Space Management Lead, despite only recently having graduated high school and not having a degree or any experience in public health.

26.     Mr. Zanoni has a demonstrated history of promoting young and/or inexperienced men to leadership positions at the expense of more experienced women working under his supervision.  In addition to the foregoing paragraph, another example is demonstrated by Mr. Zanoni promoting Mr. Gonzalez to Interim Director of Parks and Recreation, when Mr. Gonzalez was hired by the City approximately three (3) years prior and had no experience in the Parks and Recreation department.

27.     The apparent reasons expressed for the initial withdrawal from the Public Health District, which are dubious both legally and factually, were that Ms. Rodriguez was already paid too much, the sum she was seeking to remedy past discrimination and pay issues is over a million dollars, and Mr. Zanoni can achieve an accredited health program more cheaply.  There is no allegation that Ms. Rodriguez has not performed her job in a superlative manner during the pandemic, and all the accolades and performance appraisals she has received demonstrate exceptional performance.  Despite this, Defendant has gone along with Mr. Zanoni's charade, has been nonresponsive to Ms. Rodriguez's multiple written attempts to rectify the situation and has unilaterally decided that of all those who must re-apply for their positions, Ms. Rodriguez is likely to be denied re-hire.  More importantly, the City unilaterally decided to terminate Ms. Rodriguez's employment on March 1, 2022.

28.     Now that it has already taken public action concerning the Public Health District, and stirred significant publicity regarding same, the City finally seems willing to create a proposal for its actions.  Defendant has verbally communicated to most Public Health District Employees that their new positions will be publicly advertised, and though they must submit new applications in order to remain in their jobs, the applications are a mere formality.  Similarly, Defendant has told most employees they can expect to retain their positions and will not experience any decrease in pay or seniority.  Notably, however, Ms. Rodriguez was never given such assurances.  The City began publicly advertising her job and launched a nationwide search for her replacement while she was still employed in her role.  This was the sixth job posting the City launched under its new proposal.  First, the City posted five (5) mid-level manager positions.  In an effort to follow the new system the City has arbitrarily enacted, Ms. Rodriguez submitted an application to remain in her position, which the City has, to date, refused to consider.

10

29.     The County Judge continues to vocalize displeasure with the City's arbitrary plan and continues to vote in County Commissioners Court sessions to retain the Public Health District, which has caused great confusion and uncertainty surrounding Ms. Rodriguez's position and future.  Defendant's unilateral decision to withdraw the Public Health District from the County's authority allowed them to continue to take disproportionate adverse action against Ms. Rodriguez, thereby breaching her Employment Agreement, while both retaining all other Public Health District employees and staffing new employees who are coached to undermine her.  Such adverse action includes withholding pay, improperly assessing an adverse performance appraisal to further tarnish her character and credibility and ensure Ms. Rodriguez is denied a pay raise to which she is otherwise entitled, undermining Ms. Rodriguez's performance, publicly defaming Ms. Rodriguez to the press, and taking other adverse and unknown actions without the concurrence of the County Judge as required by Plaintiff's Employment Agreement.

30.     Despite Ms. Rodriguez's current Employment Agreement still necessitating concurrence between the City Manager and County Judge, Defendant has insisted on acting independently to terminate Ms. Rodriguez without concurrence from the County Judge.  In his 2021 Performance Evaluation ("Evaluation") of her, Mr. Zanoni rated Ms. Rodriguez as "needs improvement" in several categories, despite her clear record of exceeding expectations, particularly during a global pandemic and in executing the City's COVID-19 relief plan.  The Evaluation is what the Human Resources department relies upon when making pay increase decisions.  Mr. Zanoni also included several false and accusatory comments in the Evaluation, alleging that numerous employees complained about Ms. Rodriguez, and the City subsequently launched an investigation to substantiate those complaints.  The City never notified Ms. Rodriguez or the County Judge about any such complaints.  Likewise, the City never involved Ms. Rodriguez

11

in the investigation, nor did it allow her to respond to any allegations, as it had in the past.  To date, the City has never provided Ms. Rodriguez with any documentation or specific information regarding the allegations mentioned in her Evaluation, as required by City policy.  Ms. Rodriguez has been unable to confirm that any complaints (as asserted in the Evaluation) were in fact lodged against her.  At every turn, the City's conduct points to nothing other than its intent to erroneously terminate Ms. Rodriguez.

31.     Adding to the confusion is the fact that, for the same appraisal period and evaluation categories, the County Judge evaluated Ms. Rodriguez's performance as exceeding expectations and gave her the highest rating possible for each category.  The County Judge did not allege that any complaints or investigations were launched against Ms. Rodriguez during the evaluation period, nor did she provide any negative feedback regarding Ms. Rodriguez's performance in her role.  The County Judge has been consistently vocal about her satisfaction with Ms. Rodriguez's work, desire for Ms. Rodriguez to remain in her position, and disdain for the improper adverse actions the City has taken and continues to take against Ms. Rodriguez.  Additionally, Mr. Zanoni never mentioned any employment concerns to the County Judge regarding Ms. Rodriguez, therefore, the County Judge was surprised with the sudden adverse employment actions Defendant took against Ms. Rodriguez.

32.     Additionally, Defendant and its representatives have been speaking with the press, making defamatory statements regarding Ms. Rodriguez, and alleging that her salary is greater than what her employment records show.  Specifically, Defendant and its representatives alleged that Ms. Rodriguez earned more than Dr. Anthony Fauci, the Chief Medical Advisor to the President and Director of the National Institute of Allergy and Infectious Diseases ("NIAID").  Defendant and its representatives alleged that Ms. Rodriguez made more than $600,000.00, which

is not accurate.

33.     The foregoing defamatory statements are false, and Defendant acted with malice when it made them because it certainly had no reasonable basis to believe these statements were true since it has access to Ms. Rodriguez's employment records.  In fact, Defendant made these untrue statements to create a pretext for its withdrawal from the Corpus Christi-Nueces County Health District and to terminate Ms. Rodriguez from her position with the City.

34.     To give Defendant the benefit of doubt as to malice, on November 11, 2021, undersigned counsel sent an e-mail to Miles Risley ("Mr. Risley"), City Attorney, identifying the defamatory statements and asking him to have Defendant correct the defamatory news articles. Mr. Risley did not respond, the defamatory news articles have not been retracted or corrected, and in some cases, have been repeated after advice to Defendant that they were incorrect.  This lawsuit followed.  Since the lawsuit was initiated, Ms. Rodriguez has received e-mails from residents of Nueces County, undermining her authority and hurling insults at her based on what they have read in the news.

35.     The County Judge continues to refuse to vote in favor of the City retaining exclusive management of the Public Health District.  Additionally, the County Judge refused to issue Ms. Rodriguez a new employment agreement to prevent the City from removing the County Judge as a direct supervisor of the Public Health Director's position.  However, contrary to the County Judge's advisement, the County voted in favor of amending the Cooperative Agreement to Operate the Health District ("Cooperative Agreement"), resulting in a four (4) to one (1) vote. The City voted on and passed the same amendment on February 15, 2022.  The County Judge refused to sign it.

36.     The facts described above, and the causes of action outlined below, involve actions

taken by the named individuals and others known and unknown, who were acting in concert with the City to advance the conspiracy designed by the City and its representatives to terminate Ms. Rodriguez's employment and take other adverse or improper actions against her.

## COUNT I – VIOLATIONS OF THE FLSA

37.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 35 above as if fully set forth herein.  Based on the foregoing, Defendant violated FLSA by failing to properly compensate Ms. Rodriguez for work performed in the employ of the Defendant.

38.     Since April 16, 2020, Ms. Rodriguez has been entitled to the rights, protections, and benefits provided under the FLSA for non-exempt employees because applicable policies require that she be paid on an hourly, rather than salary, basis, which requires overtime to be paid. 29 U.S.C. § 201, *et seq.*  Since April 16, 2020, Ms. Rodriguez has worked in excess of forty (40) hours per week and thus, is entitled to overtime compensation at a rate of one and one-half times her regular rate of pay for each additional hour or fraction thereof worked.  29 U.S.C. § 207.

39.     The Supreme Court of the United States and the Fifth Circuit have recognized that employees should not be deprived of the benefits of FLSA simply because they are well paid. *Jewell Ridge Coal Corp. v. Local No. 6167*, 325 U.S. 161, 167 (1945); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 388 (5th Cir. 2019).  Earning a level of income is insufficient on its own to avoid the overtime protections of FLSA.  *Hewitt v. Helix Energy Solutions Group, Inc.*, 15 F.4th 289, 291 (5th Cir. 2021).  An employee must also be paid on a salary basis, and unless this condition is met the employee is "not exempt . . . *no matter how highly paid they might be.*"  29 C.F.R. § 541.601.

40.     FLSA regulations have recognized that an employee is paid on a "salary basis" if

14

the employee is regularly paid on a weekly, or less frequent basis, a predetermined amount regardless of the number of days or hours worked.  29 C.F.R. §§ 541.602(a)(1), 541.604(b), and 541.100.

41.     Here, Ms. Rodriguez was converted to a non-exempt employee on April 16, 2020, per the Memorandum.  This is specifically demonstrated by her salary being converted to an hourly rate of $66.49.  Additionally, from April 16, 2020 forward, Ms. Rodriguez was only paid for the hours she worked, and nothing more.   Ms. Rodriguez was never guaranteed a minimum predetermined amount regardless of the number of days or hours she worked.  Therefore, even though Ms. Rodriguez may be considered a highly compensated executive, she is still entitled to the overtime compensation she is owed under FLSA because the Memorandum effectively removed Ms. Rodriguez's exempt status and the Memorandum has not been rescinded by Defendant.

42.     Defendant has not paid a substantial amount of Ms. Rodriguez's overtime pay and has not made a good-faith effort to comply with the overtime provisions within the FLSA, and the refusal to pay was knowing, willful, intentional, unreasonable, arbitrary, and in bad faith. Moreover, since the City promoted Mr. Gonzalez and removed him from the Assistant Director position in June 2021, Ms. Rodriguez had no choice but to assume both roles and take on additional duties and responsibilities, all while the Delta variant of COVID-19 was rampant.

43.     Ms. Rodriguez has suffered damages as a direct result of Defendant's illegal actions.  Defendant is liable to Ms. Rodriguez for unpaid overtime wages, liquidated damages, pre-judgment interest, attorneys' fees, and costs of Court as provided by the FLSA for all violations that occurred within the three (3) years prior to the filing of this suit.

44.     Alternatively, should the Court find that Defendant acted in good faith in failing

to pay Plaintiff as provided by the FLSA, Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate.

### COUNT II – UNLAWFUL RETALIATION IN VIOLATION OF THE FLSA

45.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 43 above as if fully set forth herein.

46.     The FLSA prohibits retaliation against an employee because she has "filed a complaint or instituted or caused to be instituted any proceeding under or related to" the rights contained in the FLSA.  29 U.S.C. § 215(a)(3).

47.     To establish a FLSA retaliation claim, a party must demonstrate (1) participation in a protected activity under FLSA, (2) an adverse employment action occurred, and (3) a causal link exists between the activity and the adverse action. *Starnes v. Wallace*, 849 F.3d 627, 631-632 (5th Cir. 2017).

48.     Since Ms. Rodriguez made a demand for the wages to which she is rightfully entitled, Defendant has retaliated against Ms. Rodriguez in violation of FLSA by unilaterally deciding to withdraw from the Public Health District, making defamatory and adverse comments in the press and otherwise, single-handedly deciding how the transition will occur in a dubious manner, and taking adverse employment actions culminating in Ms. Rodriguez's termination from her position and requiring her to apply for a position she has held for almost twenty (20) years.

49.     Ms. Rodriguez has suffered damages as a direct result of Defendant's illegal and retaliatory actions.  Defendant is liable to Ms. Rodriguez for lost wages, liquidated damages, damages for emotional distress, exemplary damages, attorneys' fees, and costs of Court under FLSA.

## COUNT III – VIOLATIONS OF THE EQUAL PAY ACT

50.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 48 above as if fully set forth herein.

51.     Ms. Rodriguez's position as Director of Public Health requires a great deal of skill, effort, and responsibility.  However, Ms. Rodriguez has been paid less than other Directors and Assistant Directors—some of whom are male and younger, with fewer responsibilities, less experience, or perform similar work as her.  Additionally, Ms. Rodriguez has not been given raises at the same rate as her younger, less experienced male counterparts contrary to the expressed intent to reach pay parity across the board.  Specifically, during the relevant time period, Ms. Rodriguez was being paid less than three (3) male Assistant Directors who had equal or less responsibility, equal or less experience, and equal or less skill.  Moreover, these Assistant Directors were being paid more than Ms. Rodriguez, the Director of Public Health, during a global pandemic which required her to work around the clock, work longer hours, take on more responsibility, and expend more effort into her role as Director of Public Health.  Ms. Rodriguez was required to take on more responsibilities than the three (3) male Assistant Directors, yet they were paid more than her.

52.     The wage difference between male and female employees is not due to seniority, merit, quantity or quality of production, or a bona fide factor other than sex—such as education, training, or experience.  In the alternative, to the extent Defendant relied upon a bona fide factor other than sex, said factor was based on or derived from a sex-based differential in compensation, was not job-related with respect to the position in question, or was not consistent with a business necessity.

53.     The foregoing conduct constitutes a willful violation of the EPA.  29 U.S.C. § 206(d).

## COUNT IV – RETALIATION IN VIOLATION OF THE EQUAL PAY ACT

54.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 52 above as if fully set forth herein.

55.     Under the EPA, Defendant is legally prohibited from retaliating against employees who take action against discriminatory practices in the workplace.  29 U.S.C. § 215(a)(3).

56.     To establish an EPA retaliation claim, a party must demonstrate (1) participation in a protected activity under the EPA, (2) an adverse employment action occurred, and (3) a causal link exists between the activity and the adverse action.  *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021).  Since Ms. Rodriguez made a demand for the wages to which she is rightfully entitled, Defendant has retaliated against her in violation of the EPA by taking adverse employment actions culminating in terminating her from her position, publicly and erroneously espousing that her job can be done more cheaply, and requiring her to apply for the position she has held and in which she has honorably served for almost two (2) decades.

57.     Thus, Ms. Rodriguez has suffered damages as a direct result of Defendant's illegal and retaliatory actions.

## COUNT V – DEPRIVATION OF RIGHTS IN VIOLATION OF SECTION 1983

58.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 56 above as if fully set forth herein.

59.     Section 1983 prohibits any person from depriving another of a federal constitutional or statutory right while using state or local government authority.  42 U.S.C. § 1983.

60.     Municipal liability under Section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell v. Dept.*

*of Social Services*, 436 U.S. 658, 694 (1978)).

61.     Ms. Rodriguez is a citizen of the United States and brings this claim on behalf of herself and attaches a Verification to this Fourth Amended Complaint verifying the facts set forth herein.

62.     Defendant is the City, a municipality and, at all times, acted under the color of the law.  Defendant and its representatives are also policymakers for the municipality of Corpus Christi because they are tasked with and involved in the day-to-day policymaking and implementation for the municipality.  Specifically, Mr. Zanoni and others were included in the City Council's closed session where the City voted to withdraw from the Health District.  Mr. Zanoni and City Council were also involved in the decision to take full control of the Health District.

63.     Here, Defendant has violated Ms. Rodriguez's constitutional rights to due process in violation of 42 U.S.C. § 1983.  At all times, Defendant was acting pursuant to municipal policy, custom, or practice.  Specifically, Defendant has refused to process Ms. Rodriguez's pay increase that was authorized by the County Judge in January 2021.  Defendant has defamed Ms. Rodriguez's reputation in the press, making it exponentially harder for her to do her job and causing needless public doubt in her ability to do her job as Director of Public Health.[1]  Citizens have sent e-mail communications berating Ms. Rodriguez and the job she has done for her community during a global pandemic based on news reports containing false information.  Defendant's actions have not only caused Ms. Rodriguez monetary damages, but they have also

---

[1]     Ms. Rodriguez is no longer pursuing her unpaid wages under her Section 1983 claim, even though it is appropriate because the City has refused to pay Ms. Rodriguez the overtime she is owed while continuing to pay other non-exempt employees overtime under the Memorandum which has not been rescinded, thus violating their own policies and procedures and violating Ms. Rodriguez's due process rights under the Fifth Amendment.  However, Ms. Rodriguez is dropping these aspects of her Section 1983 claim because there are other remedies at law under Title VII, the EPA, and FLSA.

caused damage to Ms. Rodriguez's reputation, thereby it detrimentally hindered her ability to keep her community safe during an ongoing health crisis.

64.     While committing the actions described above, Defendant was acting under the color of state law, acting pursuant to customs, practices, and policies of the City, doing so without proper reason or authority, without reasonable or probable cause, and with deliberate indifference to the rights of Plaintiff.   Specifically, prior to March 1, 2022, Defendant, as a policymaker, created, authorized, and/or ratified the decision to take adverse employment action against Ms. Rodriguez in the form of an adverse employment appraisal, a Disciplinary Memorandum containing fabrications, and implementing policies that move to take sole management of the Health District with the sole purpose of terminating Ms. Rodriguez's employment.   The policy to take sole control of the Health District was an official policy that was solely implemented to undermine Ms. Rodriguez's Employment Agreement to terminate her without the concurrence of the County Judge as required by the Employment Agreement.   All the above-mentioned actions were taken without the concurrence of the County Judge as required by Ms. Rodriguez's Employment Agreement.   Prior to March 1, 2022, the City did not have full control of the Health District, requiring the County Judge's approval to take any employment action related to Ms. Rodriguez.   All the adverse employment actions Defendant took against Ms. Rodriguez prior to March 1, 2022 violated her due process rights under Section 1983 because it did so without authority, which Defendant has admitted and acknowledged to the Court in its Advisory.   (ECF 38).   Defendant's main motivation to take sole management of the Health District has been primarily to intentionally create a pretext to terminate Ms. Rodriguez's employment since the County Judge has refused to concur on her termination.   Lastly, Ms. Rodriguez's termination on March 1, 2022 is also a violation of her due process rights because while the City and the County

have executed the Amended Cooperative Agreement for City-Operated Corpus Christi-Nueces County Public Health District, the County Judge did not agree to it and it did not change the terms of Ms. Rodriguez's Employment Agreement nor does it nullify its requirements.  Ms. Rodriguez has not executed any other agreement; thus, the Employment Agreement is the only controlling document that relates to the relationship between the City and Ms. Rodriguez.

65.     Defendant violated the civil rights of Ms. Rodriguez, including violation of the rights found in the Fourteenth Amendment to the United States Constitution, by creating policies that are adverse to Ms. Rodriguez's employment and terminating her employment without the County Judge's concurrence, thereby failing to comply with her Employment Agreement.  These actions were intentionally taken by Defendant.

66.     As a direct result of these violations, and in accordance with Section 1983, Ms. Rodriguez's civil rights have been violated in that she has suffered, and will continue to suffer, damages as described in this Fourth Amended Complaint, as well as incurring attorneys' fees, costs, and expenses as authorized by Section 1983, in an amount not yet ascertained, all of which will be shown according to proof at trial.

**COUNT VI – DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII**

67.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 65 above as if fully set forth herein.

68.     Title VII prohibits employers from creating and implementing unlawful employment practices that discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of their race, color, religion, sex, or national origin.  42 U.S.C. § 2000e, *et seq.*

69.     The City is an employer within the meaning of Title VII because it employs fifteen

21

(15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.  42 U.S.C. § 2000e(b).  Additionally, Ms. Rodriguez is an employee as defined in Title VII.  42 U.S.C. § 2000e(f).

70.     During Ms. Rodriguez's employment with the City, she has faced discrimination based on her sex.  Notably, when Ms. Rodriguez brought her concerns to Mr. Zanoni regarding the discrepancies in pay between men and women working within the Health District, she was scolded and told she was unappreciative.  Moreover, because she is a woman, Mr. Zanoni has and continues to undermine and circumvent Ms. Rodriguez's authority as Director of Public Health and has made decisions regarding the management and day-to-day operations of the Public Health District without consulting her.  Specifically, Ms. Rodriguez was not allowed to contribute to the transition plan that was implemented after the City took sole management of the Health District.

71.     Most men within the Health District received substantial pay increases while most women continued to be compensated under the market average, regardless of their position.  In 2021, the County Judge gave Ms. Rodriguez a seven percent (7%) pay increase, after Mr. Zanoni refused to give her the pay increase she deserved and only gave her a six percent (6%) increase, despite exceptional job performance.  Meanwhile, Mr. Zanoni gave Mr. Gonzalez an eleven percent (11%) pay increase and processed the paperwork in a timely manner.  In contrast, Mr. Zanoni, has refused to process the paperwork authorizing Ms. Rodriguez's additional seven percent (7%) pay increase.  As of the date of this filing, Ms. Rodriguez has yet to receive the pay increase she earned in January 2021 because Mr. Zanoni has refused to process the paperwork and made false accusations regarding her performance in an effort to allege that she is undeserving of the raise.  Specifically, Mr. Zanoni has fabricated untruths about Ms. Rodriguez's performance to improperly withhold the compensation she deserves and has earned through her service to her

22

community; for example, Mr. Zanoni rated Ms. Rodriguez as "needs improvement" in several categories, despite her clear record of exceeding expectations, particularly during a global pandemic and in executing the City's COVID-19 relief plan. Mr. Zanoni also included several false and accusatory comments in the Evaluation, alleging that numerous employees complained about Ms. Rodriguez, and the City subsequently launched an investigation to substantiate those complaints. The City never notified Ms. Rodriguez or the County Judge about any such complaints. Likewise, the City never involved Ms. Rodriguez in the investigation, nor did it allow her to respond to any allegations, as it had in the past. Lastly, when Ms. Rodriguez suggested that employees' years of experience should be considered when making salary adjustments, Mr. Zanoni yelled at her and asked her if she thought she knew more than human resources. In that same meeting, Mr. Zanoni allowed Michael Rodriguez, his Chief of Staff, to also raise his voice at Ms. Rodriguez in front of her new supervisor, Mr. Viera. Notably, Mr. Zanoni has demonstrated a preference for hiring and promoting inexperienced men to leadership roles over experienced and qualified women. Specifically, Mr. Zanoni appointed Mr. Trevino as Space Management Lead when Mr. Trevino only recently graduated high school and has no degree or experience in public health. Similarly, Mr. Zanoni promoted Mr. Gonzalez to Interim Director of Parks and Recreation over more experienced and qualified women. At all times, Mr. Zanoni was acting with the City's authority.

72.     As a result of the sex discrimination Ms. Rodriguez has endured, the terms and compensation of her employment have changed since she is now being forced to re-apply for the position she has held for nearly twenty (20) years, and has been terminated as a result of the Defendant's efforts to unilaterally control the Health District and terminate her for complaining of Title VII violations. Most Health District employees have been advised that re-applying for their

current positions is merely a formality, however, Ms. Rodriguez has not been told the same.  In fact, since applying she has not been contacted by Human Resources regarding her application, despite her demonstrably exceptional service to the community over the last twenty (20) years.

73.     Ms. Rodriguez has also been denied the compensation she is owed and has earned through her diligent work because of the sex-based discrimination she has faced at the Health District under Mr. Zanoni and the City's management.  Moreover, Ms. Rodriguez faced a hostile work environment because Mr. Zanoni created an environment where undermining Ms. Rodriguez and her authority as Director of Public Health was not just authorized but *required* in order to be in Mr. Zanoni's and Mr. Viera's good graces.  Specifically, Mr. Zanoni and Mr. Viera allowed City employees who reported directly to Ms. Rodriguez to undermine her authority and disregard her instruction, thus making it harder to do her job.  For example, on or about February 11, 2022, the County Judge scheduled a meeting with County employees who worked at the Health District. Since the County Judge is only authorized to speak on behalf of the County, she requested to only speak with County employees and that the meeting not be recorded.  Ms. Rodriguez informed Mr. Viera about the County Judge's request, to which he responded that regardless of that instruction, he would be present at the meeting and that the City's communications team would also be there to record the meeting.  As City employees arrived at the meeting, Ms. Rodriguez informed them that they could not stay, however, when Ms. Rodriguez's assistant, Leticia Varela ("Ms. Varela"), a City employee, arrived at the meeting, she pretended she was unaware she could not be there, directly undermining Ms. Rodriguez's prior communication that she could not be present because of her status as a City employee.  Ms. Varela left the meeting and then returned with Mr. Viera, who had also been informed that the meeting was only for County employees.  In this, both Ms. Varela and Mr. Viera clearly disregarded Ms. Rodriguez's authority and direction, even though

24

Ms. Rodriguez is Ms. Varela's direct supervisor.  Mr. Zanoni and Mr. Viera have encouraged City employees to turn against Ms. Rodriguez, creating a hostile work environment for her.  Even after being notified of Ms. Rodriguez's EEOC Charge and claims regarding the gender the discrimination that is being fostered within the Health District under Mr. Zanoni's command, the City has failed to protect Ms. Rodriguez and other similarly situated employees from violations under Title VII.  Mr. Zanoni and Mr. Viera were acting with the City's authority and knowledge when they violated Ms. Rodriguez's rights under Title VII.

74.    The foregoing conduct demonstrates the City acted with malice or reckless indifference to Ms. Rodriguez's rights, and, as a result, it is liable for compensatory and punitive damages.

## COUNT VII – RETALIATION IN VIOLATION OF TITLE VII

75.    Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 73 above as fully set forth herein.

76.    Title VII prohibits retaliation in response to any claims or reports of discrimination. 42 U.S.C. § 2000e-3(a).  More specifically, it is considered unlawful employment practice to take adverse employment action against an employee because they have engaged in protected activity under Title VII.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

77.    Here, Ms. Rodriguez engaged in a protected activity when she addressed the discrepancies in pay between the men and women working within the Health District with Mr. Zanoni.  Additionally, since she filed her EEOC complaint in November of 2021, Ms. Rodriguez has been excluded from meetings for which her presence is necessary as Director of Public Health and a member of the "Space Management" team for the "Ten Point Strategic Plan."  Additionally, she has received adverse employment evaluations that ultimately affect her annual pay increases.

The retaliation Ms. Rodriguez has experienced would not have occurred had she not raised her concerns to Mr. Zanoni and had she not filed her EEOC complaint.  At all times, Mr. Zanoni was acting with the City's authority.

78.     The aforementioned conduct demonstrates the City acted with malice or reckless indifference to Ms. Rodriguez's rights, and, as a result, are liable for compensatory and punitive damages.

## COUNT VIII – RETALIATION IN VIOLATION OF THE ADA

79.     Ms. Rodriguez realleges and incorporates by reference the allegations of Paragraphs 1 through 77 above as fully set forth herein.

80.     The ADA prohibits retaliation in response to any claims or reports of discrimination.  42 U.S.C. § 12203(a).  More specifically, it is considered unlawful employment practice to take adverse employment action against an employee because they have engaged in protected activity.  *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

81.     Here, Ms. Rodriguez engaged in a protected activity when she told Mr. Zanoni of her disability during the budget meeting in July 2019 and requested he speak up, which he unreasonably refused to do.  Due to Mr. Zanoni's refusal to make a reasonable accommodation for Ms. Rodriguez, she had to inconvenience others to obtain the information, thereby burdening others when a reasonable accommodation was easily obtainable.  Ms. Rodriguez was embarrassed and ashamed by the events of the July 2019 meeting.  Notably, since the July 2019 budget meeting, the filing of Ms. Rodriguez's EEOC Charge, and up until her termination she has been excluded from other meetings and brainstorming sessions, despite being the Public Health Director.  The retaliation Ms. Rodriguez has experienced would not have occurred had she not requested that Mr.

Zanoni accommodate her request for him to speak louder during the budget meeting and had she

not filed her EEOC Charge.  At all times, Mr. Zanoni was acting with the City's authority.

82.     The foregoing conduct demonstrates the City acted with malice or reckless

indifference to Ms. Rodriguez's rights under the ADA, and, as a result, it is liable for compensatory

and punitive damages.

### COUNT IX – RETALIATION IN VIOLATION OF THE ADEA

83.     Ms. Rodriguez realleges and incorporates by reference the allegations of

Paragraphs 1 through 81 above as if fully set forth herein.

84.     The ADEA prohibits employers from discriminating against employees who are

over the age of forty (40), based on their age.  29 U.S.C. § 621 *et seq.*  The ADEA also makes it

unlawful for an employer to discriminate against an employee because such individual has opposed

any practice that is made unlawful under the ADEA.  29 U.S.C. § 623(d).

85.     It is considered unlawful employment practice to take adverse employment action

against an employee because they have engaged in protected activity under the ADEA.

*Heggemeier v. Caldwell County, Texas*, 826 F.3d 861, 869 (5th Cir. 2016).

86.      The City is an employer within the meaning of the ADEA because it employs

fifteen (15) or more employees for each working day in each of twenty (20) or more calendar

weeks in the current or preceding calendar year.  29 U.S.C. § 630(b).  Additionally, Ms. Rodriguez

is an employee within the meaning of the ADEA because she is employed by the City and belongs

to the class of employees protected under the ADEA, namely because she is over the age of forty

(40).  29 U.S.C. § 630(f).  Additionally, Ms. Rodriguez is protected under the ADEA because she

has refused to comply with discriminatory age-based practices at the direction of Mr. Zanoni and

the City.

87.     As stated above in Paragraph 18, Dr. Burgin was qualified for his position as Public Health Authority, thus Ms. Rodriguez had no performance-related reason to terminate his employment.  However, upon refusing to follow Mr. Zanoni's orders—to fire Dr. Burgin because he was too old—Ms. Rodriguez was scolded by Mr. Zanoni and was forced to terminate Dr. Burgin out of fear of losing her own employment.  Additionally, since filing her EEOC Complaint, Ms. Rodriguez has suffered additional retaliation for reporting Mr. Zanoni and the City's violations under the ADEA, and other related acts.  Specifically, Ms. Rodriguez has been defamed in the media, received adverse performance evaluations, and she has been terminated as Director of Public Health.

88.     The foregoing conduct demonstrates the City acted with malice or reckless indifference to Ms. Rodriguez's rights under the ADEA, and, as a result, it is  liable for compensatory and punitive damages.

## **PRAYER**

89.     WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that the Court issue a citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

a.  A declaratory judgment declaring Defendant willfully, unreasonably, wrongfully, and without good faith violated their statutory and legal obligations, and deprived Plaintiff of her rights, protections, and entitlements under federal law, as alleged herein;

b.  An order for a complete and accurate accounting of all the compensation to which Plaintiff is entitled under both the EPA and FLSA;

c.  Declare that Defendant has violated Section 1983;

d.  Liquidated damages equal to her unpaid compensation;

e.  All costs and attorneys' fees incurred in prosecuting these claims;

f.  Pre- and post-judgment interest;

g.  General damages;

h.  Special damages;

i.  Nominal damages;

j.  Exemplary damages;

k.  Punitive damages;

l.  Compensatory damages;

m.  Costs of court; and

n.  Such further relief, both general and special, at law or equity, to which Plaintiff

    may show herself to be justly entitled.

Respectfully submitted,

Bryant S. Banes
Texas State Bar No. 24035950
Federal ID No. 31149
Daniela P. Armenta
Texas State Bar No. 24123162
Federal ID No. 3727884
NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas 77027
(713) 629-1800
(713) 629-1812 (Fax)
E-mail:  bbanes@nhblaw.com
              darmenta@nhblaw.com

**ATTORNEYS FOR PLAINTIFF,
ANNETTE RODRIGUEZ**

29

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on this 12th day of April 2022, through the CM/ECF system, which caused Defendant to be served through their counsel of record by electronic means.

Frederick J. McCutchon
Renatto Garcia
Wood Boykin & Wolter, P.C.
555 N. Carancahua, Suite 1510
Corpus Christi, Texas 78401

*Attorneys for Defendant*

Bryant S. Banes

## VERIFICATION

STATE OF TEXAS       §
NUECES COUNTY      §


    Before me, the undersigned notary, on this day personally appeared **Annette Rodriguez** the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

    1.    "My name is Annette Rodriguez, and I am over the age of eighteen (18) and am capable of making this Verification.

    2.    I have read Plaintiff's Fourth Amended Complaint against Defendant, the City of Corpus Christi in Civil Action No. 2:21-cv-00297. The facts stated in it are within my personal knowledge and are true and correct to the best of my knowledge. To the extent the content of the foregoing Fourth Amended Complaint is that of counsel, I have relied upon counsel in making this Verification. I understand that false statements herein are made subject to the penalties of perjury."


            _____
            Annette Rodriguez


**SUBSCRIBED AND SWORN TO BEFORE ME** on this ___7th___ day of ___April___, 2022, to which witness my hand and official seal.

Patricia D Presas
My Commission Expires
11/19/2024
ID No. 132791807

         _____
         Notary Public in and for the State of Texas